IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00169-CR

 

James Cooper,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 183rd District Court

Harris County, Texas

Trial Court No. 932,868

 



MEMORANDUM  Opinion



 








          A jury convicted James Cooper and his
brother John of murder in a joint trial.  The jury assessed punishment at
forty-five years’ imprisonment for James and forty for John.  Both appealed.[1] 
James contends in six points that: (1) the evidence is legally and factually
insufficient to prove he intended to cause death or serious bodily injury; (2
points); (2) the evidence is legally and factually insufficient to disprove
self-defense; (2 points); (3) he received ineffective assistance of counsel
during the guilt-innocence and punishment phases of trial; (2 points).  We will
affirm.

Background

          The indictment alleges two alternative
legal theories and two manners and means by which James committed the offense. 
First, the indictment alleges that James caused the death of Craig Hoyer by
striking Hoyer with his hand or by kicking him.  See Tex. Pen. Code Ann. § 19.02(b)(1)
(Vernon 2003).  Second, the indictment alleges that James intended to cause
serious bodily injury to Hoyer and caused his death by committing an act
clearly dangerous to human life, namely, hitting Hoyer with his hand or kicking
him.  Id. § 19.02(b)(2) (Vernon 2003).

          The evidence reflects that Hoyer lived
in the same house with the Cooper brothers.  On the date in question, some of the
State’s witnesses testified that Hoyer and the Coopers had gotten into an
argument then went outside.  The witnesses generally testified that the Coopers
were hitting and kicking Hoyer.  One stated that John was holding Hoyer in a
“neck hold” while James was hitting and kicking him.

          James testified that Hoyer attacked
him for no apparent reason while James was outside.  He said that Hoyer rushed
out of the house and hit him “upside the head.”  During the struggle which
ensued, James stated that he thought Hoyer hit his head on the bumper of a
nearby truck.  James at first thought that Hoyer was feigning unconsciousness,
but when he realized that Hoyer was actually unconscious, he ran inside and
called 911.

          A medical examiner testified that
Hoyer died from “[b]lunt impact trauma to the head and neck.”  She described
numerous injuries he had sustained: multiple internal injuries at the back of
the head, multiple contusions on the right scapula, multiple contusions in the
left lateral mid area of the back; a laceration to the right vertebral artery; and
a laceration to the liver.

Sufficiency of Evidence

          James argues in his first and third
points respectively that the evidence is legally and factually insufficient to
prove he intended to cause death or serious bodily injury to Hoyer.

          [A] jury may infer intent [or knowledge] from any facts
which tend to prove its existence, including the acts, words, and conduct of
the accused, and the method of committing the crime and from the nature of
wounds inflicted on the victims.

 

Hart v. State, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (quoting Manrique v.
State, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999) (Meyers, J.,
concurring)); Watson v. State, 160 S.W.3d 627, 629 (Tex. App.—Waco 2005,
pet. filed).

          Several witnesses testified that they
saw James and/or John hitting and/or kicking Hoyer immediately before his
death.  One of the State’s witnesses testified that John held Hoyer by the neck
while James was hitting and kicking him.  The medical examiner opined that
Hoyer’s injuries were consistent with the conduct described by the State’s
witnesses.  Thus, the evidence is legally sufficient to prove that James,
either individually or as a party, acted with intent to cause death or serious
bodily injury to Hoyer.  See id.  Accordingly, we overrule James’s first
point.

          James contends that the evidence of
intent is factually insufficient because: (1) the medical examiner testified
that one of the head injuries could have been caused by falling and hitting a
fixed object like a bumper as James testified that Hoyer did; (2) none of the
State’s witnesses testified that James or John kicked Hoyer in the back of the
head; (3) there were no abrasions on James’s knuckles; and (4) James promptly
called 911 when he realized that Hoyer was unconscious.

          However, the medical examiner testified
that the multiple head injuries Hoyer suffered would not be consistent with a
single fall.

          Because of the State’s witnesses’
fairly consistent description of how James and John hit and kicked Hoyer,
because of the medical examiner’s testimony that Hoyer’s injuries were
consistent with the conduct described by these witnesses, and because no
witness corroborated James’s description of the altercation, we cannot say that
the evidence supporting the verdict is “too weak to support the finding of
guilt beyond a reasonable doubt” or that the contrary evidence is so strong “that
the beyond-a-reasonable-doubt standard could not have been met.”  See Zuniga
v. State, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004).

          Therefore, the evidence is factually
sufficient to prove that James, either individually or as a party, acted with
intent to cause death or serious bodily injury to Hoyer.  Id. 
Accordingly, we overrule James’s third point.

Self-Defense

          James argues in his second and fourth
points respectively that the evidence is legally and factually insufficient to
disprove that he acted in self-defense.

          These points revolve around James’s
testimony that Hoyer attacked him and struck his head on a bumper during the
ensuing struggle, the medical examiner’s testimony that one of Hoyer’s head
injuries could have been caused by falling and striking his head on a bumper,
and James’s testimony that he called 911 when he realized Hoyer was
unconscious.

          However, James’s version of the events
is inconsistent with the injuries sustained by Hoyer as described by the
medical examiner.  Thus, James’s claim of self-defense rested on credibility.  The
jury is the ultimate fact finder on issues of credibility, and by its verdict,
the jury chose to believe the State’s witnesses.  See Parker v. State,
119 S.W.3d 350, 355 (Tex. App.—Waco 2003, pet. ref’d).  We must defer to the
jury in its resolution of such issues.  Id.  Accordingly, we cannot say
that the evidence is legally or factually insufficient to disprove self-defense. 
Thus, we overrule James’s second and fourth points.

Ineffective Assistance—Guilt-Innocence

          James contends in his fifth point that
he received ineffective assistance of counsel during the guilt-innocence phase
because counsel: (1) failed to make an opening statement; (2) offered James’s
remote prior convictions in evidence during James’s direct examination; (3)
failed to request a limiting instruction for James’s prior convictions; (4)
failed to adequately prepare James to testify; and (5) failed to request an
instruction on the lesser-included offense of manslaughter.

          We begin with a “strong presumption”
that counsel provided reasonably professional assistance, and an appellant
bears the burden of overcoming this presumption.  Andrews v. State,
159 S.W.3d 98, 101 (Tex. Crim. App. 2005).  Generally, the appellate
record is insufficient to satisfy this burden.  Scheanette v. State,
144 S.W.3d 503, 510 (Tex. Crim. App. 2004).  “[I]n the majority of cases,
the record on direct appeal is simply undeveloped and cannot adequately reflect
the failings of trial counsel.”  Id. (quoting Bone v. State,
77 S.W.3d 828, 833 (Tex. Crim. App. 2002)).

          Counsel’s failure to make an opening
statement and his alleged failure to adequately prepare James to testify will
generally not support a finding of ineffective assistance on direct appeal.  See
Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003) (failure
to make opening statement or prepare witnesses).

          Regarding evidence of prior
convictions, it has been held that there can be no reasonable trial strategy
for defense counsel to offer evidence of his client’s 17-year-old murder
conviction during the guilt-innocence phase of a narcotics case.  See Stone
v. State, 17 S.W.3d 348, 352 (Tex. App.—Corpus Christi 2000, pet. ref’d). 
In that case however, it was noted that this prior conviction would not be
admissible for impeachment purposes because of its remoteness.  Id.

          Here however, defense counsel offered
in evidence a series of prior theft and felony convictions: theft convictions
from 1981, 1989, 1994, 1996, and 1997; a 1989 conviction for burglary of a
motor vehicle (listed as an enhancement allegation in the indictment); and a
1990 conviction for possession of a controlled substance (also listed as an
enhancement allegation).

          Under Rule of Evidence 609(b), the
admissibility of the four oldest convictions (from 1981, 1989 (2), and 1990)
for impeachment purposes would depend on whether their probative value
substantially outweighed the danger of unfair prejudice.  See Tex. R. Evid. 609(b).  Because of the
impeachment value of the remote theft convictions, because Cooper had a
continuing record of criminal misconduct during the ten years immediately preceding
the date of the present offense, and because of the importance of James’s
testimony and his credibility, the trial court would have been well within its
discretion to admit evidence of the older convictions.  See Rodriguez v.
State, 129 S.W.3d 551, 558-60 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d); Jackson v. State, 50 S.W.3d 579, 592-94 (Tex. App.—Fort Worth 2001,
pet. ref’d).

          Because the older convictions were
admissible for impeachment purposes and because the State had already given
notice of its intent to use these convictions at trial, we cannot fault defense
counsel for preemptively introducing them at the beginning of James’s direct
examination.  See Rodriguez, 129 S.W.3d at 560.

          The trial court provided two
instructions in the guilt-innocence charge regarding evidence of extraneous
offenses (including convictions).  One instructed the jury that it could not
consider this evidence for any purpose unless the jury was convinced beyond a
reasonable doubt that James had committed the extraneous offenses.  The other
instructed the jury that this evidence should be considered, if at all, only
for evaluating the weight to be given James’s testimony.

          Because the court provided these
instructions to the jury, James cannot show “a reasonable probability that, but
for counsel’s [failure to request a limiting instruction], the result of the
proceeding would have been different.”  See Andrews, 159 S.W.3d at 102
(quoting Strickland v. Wash., 466 U.S. 668, 694, 104 S. Ct. 2052, 2068,
80 L. Ed. 2d 674 (1984)); Rodriguez, 129 S.W.3d at 560-61; Walker v.
State, 4 S.W.3d 98, 106-07 (Tex. App.—Waco 1999, pet. ref’d).

          Regarding counsel’s failure to request
an instruction on the lesser-included offense of manslaughter, counsel is not
ineffective in failing to request such an instruction if it is not supported by
the evidence.  See Flores v. State, 42 S.W.3d 277, 282 (Tex. App.—Corpus Christi 2001, no pet.).

          Under the evidence, no rational trier
of fact could have found that, if James was guilty, he was guilty of only
manslaughter because no rational trier of fact could have concluded that James
acted only recklessly.  See Jackson v. State, 115 S.W.3d 326, 330-31 (Tex. App.—Dallas 2003, no pet.); Ahrens v. State, 43 S.W.3d 630, 635-36 (Tex. App.—Houston [1st Dist.] 2001, pet. ref’d).  Thus, James would not have been entitled
to an instruction on the lesser-included offense of manslaughter.  Id.  Accordingly, we cannot say his counsel rendered ineffective assistance by
failing to request such an instruction.  See Flores, 42 S.W.3d at 282. 
Therefore, we overrule James’s fifth point.

Ineffective Assistance—Punishment

          James contends in his sixth point that
he received ineffective assistance of counsel during the punishment phase
because counsel: (1) failed to present mitigating evidence; and (2) applied the
parole law to James’s potential sentence during closing argument.

          A claim that counsel was ineffective
for failing to present mitigating evidence cannot succeed on direct appeal if
the appellant does not identify the particular evidence which counsel failed to
present and if counsel is not given an opportunity to explain his trial
strategy.  See Bone, 77 S.W.3d at 834-35.  Here, James observes in his
brief only generally that “a number of” his friends were available to testify,
that his brother and co-defendant John “could have been asked some questions
that might have helped humanize [James],” and that he “could have testified
himself with regard to whatever remorse he felt about the complainant’s death.”

          Ineffective assistance claims must “be
firmly founded in the record.”  Id. at 835 (quoting Thompson v. State,
9 S.W.3d 808, 814 (Tex. Crim. App. 1999)).  James’s general allegations of
potential mitigating evidence do not satisfy this test.  See Bone, 77
S.W.3d at 834-35.

          The record reflects that counsel tried
to use the parole law to James’s advantage by encouraging the jury to assess
the minimum punishment of twenty-five years because he would be seventy-two
years’ old on the earliest date at which he would be eligible for parole.[2] 
We can only speculate as to the wisdom of this strategy. However, “that a trial
strategy does not work does not mean that counsel was ineffective.”  See Johnson v. State, 2004 Tex. App. LEXIS 5939 at **14-15
(Tex. App.—Houston [1st Dist.] July 1, 2004, pet. ref’d).  Accordingly, we
overrule James’s sixth issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed October 12, 2005

Do not publish

[CRPM]

 









[1]
          John Cooper’s appeal is docketed
in this Court under cause no. 10-04-00170-CR.





[2]
          James was indicted as an
habitual felon.  See Tex. Pen.
Code Ann. § 12.42(d) (Vernon Supp. 2004–2005).  Because this was a 3g
offense, James will not be eligible for parole until he has served one-half of
his sentence.  See Tex. Code
Crim. Proc. Ann. arts. 37.07, § 4(a), 42.12, § 3g(a)(1)(A) (Vernon Supp. 2004–2005).